WEBBER FURBISH *versus* DANIEL WHITE & *al.*

If the grantee of land to which his grantor had no other right than under a bond, afterwards assigned to the grantee, containing an agreement to convey the same on the payment of a certain note, brings his bill in equity against his grantor and the obligor in the bond and a creditor of the obligor who had levied an execution upon the land as the obligor's property, seeking a conveyance of the land to him, he will not be entitled to relief, unless he shows a performance, or tender of performance, of the conditions of the bond before the institution of his process.

THIS was a bill in equity, and was heard upon bill, answers and proof. The substance of the bill, answers and proof, will be found in the opinion of the Court.

*F. Allen* and *Otis,* for the plaintiff.

*Bradbury & Rice,* for the defendants.

The opinion of the Court was drawn up by

TENNEY J. — On the 25th day of August, 1824, Benjamin Brown gave to his son, Albert G. Brown, a bond to convey to him a farm in the town of Vassalboro', on the payment of a note of the same date, given by the obligee to the obligor for the sum of $1163,74, payable in six months after demand, with annual interest, upon which note has been indorsed the interest for two years and the sum of $163. On the 8th day of June, 1835, Albert G. Brown contracted in writing with the plaintiff to convey to the latter the same farm, on or before the first day of January next following, and in consideration thereof received certain notes given by Eben. French and Samuel McGaffey. On the 9th of March, 1836, Albert G. Brown assigned the bond of his father to him, under his hand and seal, to the plaintiff, promising therein to pay and take up the note mentioned in the bond of Benjamin Brown. It appears, that the plaintiff went into possession of the farm January 1, 1836, and continued to occupy the same till after

the levy, which Daniel White, the defendant, caused to be made thereon upon an execution issued upon a judgment in his favor against Benjamin Brown, Ephraim Lincoln and Samuel J. Foster, within thirty days after its rendition, the same property having been attached on the original writ, August 22, 1839.

The plaintiff charges in his bill, among other things, that Albert G. Brown stated at the time of the contract for the purchase of the farm, that a deed could be had of his father at any time, when he was requested to execute it, and referred him to his father for that purpose ; *that he called upon Benjamin Brown, who told him, that he would give a deed to the plaintiff or to his son, whenever requested thereto, and without any reference to any matters betwixt him and his son* ; that on the first day of January, 1836, Albert G. Brown gave him possession of the farm with the knowledge and concurrence of his father, and that the father and son being called upon again for a deed, they declared that it should be made and sent to him at his residence ; that subsequently the said Benjamin promised to make and deliver a deed of the farm to the plaintiff, and a time was appointed therefor, but that no deed was ever given ; that before the purchase by the plaintiff of the farm of Albert G. Brown, that divers dealings were had betwixt said Albert and his father, and that in consideration of various payments and dealings between them, the note mentioned in the bond was paid ; that the levy was made by the defendant, White, upon the farm, after he was expressly notified that the plaintiff had purchased and paid for it ; and that there was an agreement between said White and Benjamin Brown to have the levy made for the purpose of defrauding the plaintiff of his farm, and preventing him from obtaining the title thereto, and enabling Benjamin Brown to have the use of the same.

Benjamin Brown, in his answer, denies, that he ever stated, that he would give a deed to Albert, or to the plaintiff, whenever thereto requested, excepting upon the condition that the full amount of the note and interest should be paid ; that so

far from saying that a deed should be made without reference to matters betwixt him and his son, he always told the plaintiff, that he would never give a deed either to him or his son, until the note and interest should be fully paid; denies that the plaintiff went into possession of the farm with his concurrence or knowledge; says he was always opposed to his son's selling the farm; denies that the note has been paid, excepting so far as appears by the indorsements thereon; and says it is now in his hands; admits, that there were dealings between him and his son, but distinctly and positively denies, that any thing was due from him to Albert on account of any such dealings, or that he was ever indebted to his son on account, or in any other way, by reason of any such dealings or payments whatever; denies that there ever was a time, when the whole amount of the note was not due, excepting the indorsements; denies, that there was any understanding or agreement between White and himself to have the levy made by the former, for the purpose of defrauding the plaintiff, or that the same should be for his use and benefit; and that the right of his son under his bond was forfeited long before the attachment by White, a demand having been made upon his son for payment of the note, more than six months prior thereto.

Albert G. Brown and Daniel White, in their answers confirm the statements and denials made in the answer of the other defendant, so far as the subject matter thereof was within their knowledge respectively. And the defendant, White, admitting the levy of his execution as charged in the bill, denies that prior thereto, he had knowledge, that the plaintiff had paid for the farm, nor was he notified or informed of it; but was informed by Benjamin Brown, that the right of his son under the bond was forfeited, that the note was unpaid, and had always said he would never give a deed, till he was paid every dollar, principal and interest.

The plaintiff relies upon the testimony of several witnesses, in support of the charges of his bill. Alden Sturgiss deposes, that before the plaintiff moved upon the farm, Albert told him he had paid for the farm, that the last of the year 1835, or

first of the year 1836, Benjamin Brown said he sold to his son the farm which the plaintiff had purchased of his son, that Albert had paid for the farm, but he could not give him a deed, till he had settled. Hiram Sturgiss deposes, that eighteen or nineteen years before the testimony was given, he was assisting Albert G. Brown to move a barn standing upon the farm, the father found fault, saying it was well enough as it was. The son said, "Father, whose property is this?" the father answered, "It is yours," whereupon the other said, "I shall do as I please with it." At another time, before the plaintiff took possession of the farm, Benjamin Brown engaged the witness to move a certain shop upon what he called Furbish's farm. "Three or four years before the taking of the deposition, Benjamin Brown was complaining to the witness of his poverty, and on being asked if he did not own the Furbish farm, he said "No." Thomas Robbins, Jr. deposes, that Albert G. Brown made important and extensive repairs, upon the buildings upon the farm, and improvements in fences, while he occupied it, and before he sold to the plaintiff, of which his father had knowledge; and before the plaintiff moved upon the farm he heard Benjamin Brown say, his son had paid him for the farm, but was not willing to give him a deed, till he could get a settlement with him, that there had been considerable dealings, and that the son was very loth to settle. It is contended for the plaintiff, that these declarations of the father and son are confirmed by the circumstance, that the former ceased to exercise any control over the farm for many years, and has never claimed to hold the relation of landlord since the bond was executed; that the son was a man of property who spent a large sum upon the farm during his occupancy, and was able to pay the note whenever called upon therefor. Evidence is in the case tending to show, that when the defendant, White, was giving directions to proceed in the levy of his execution upon the farm, he was informed that the plaintiff had bought and paid for it.

The plaintiff seeks a decree of specific performance of the contract, contained in the bond of Benjamin Brown to his son,

Albert G. Brown, and asks that the defendant, White, in whom is the legal title under his levy, be required to convey to the plaintiff the land upon which his execution was extended. The prayer of the bill is founded upon the alleged fact, that the note, the payment of which was necessary, to entitle the obligee in the bond to a conveyance, has been paid. It is not pretended, that unless this has taken place, either by a direct payment, or such a state of accounts and dealings between the obligor and obligee, that there is a balance due the latter equal to the amount of the note, that the plaintiff has equities, which can entitled him to the relief sought. The payment of the note was a condition precedent to the obligation to convey. But it is contended, that the statements of Benjamin Brown as they appear in evidence, being the confessions of the party, who held the note at the time they were made, are of the same validity against the defendant, White, as they would be if made by him, and that these, as well as those of the son, are full upon the question, whether the note was paid. The evidence to show, that payment of the note was made as charged in the bill is not, when taken in connection with every thing having relation to the subject, satisfactory. The statements of the parties to the note appear to have been casual remarks, having no direct reference to any question touching either the note or the bond; indeed, neither are mentioned or alluded to by them; it appears, that in many of the conversations, the witnesses heard a part only of what was said; the deponents seem not to have been in any way interested in the subject matter, concerning which they represent the statements to have been made, so that they would probably fully, and clearly understand the true import of the language used, or recollect after such an interval of time, the precise impression made upon their own minds, especially as they have not reviewed the matter by calling to their remembrance, what was in fact said, until a very recent period. When we take into consideration, the relation, that existed between the obligor and the obligee, it does not appear strange that the former should be willing to permit the latter

to occupy the farm, without payment of the note, especially as the improvements made, together with the farm itself, were probably ample security for its eventual payment with interest. Opposed to the evidence adduced, to show a payment of the note, is the full, clear and distinct denial of payment in any mode whatever, made by both the parties to the note under oath in their answers, which are responsive to the bill, and the existence of the note and its production among the documents in the case. By the allegations in the bill, and depositions of the witnesses, the note, if payment thereof was ever made, must have been paid before the first day of January, 1836; there is nothing in the bill or the proof, tending to show that any account or dealing between the parties to the note, raising a balance in favor of the maker, or any payment, occurred or was made subsequent to that time, which should be applied to diminish the amount. But on the ninth day of March, 1836, the obligee in the bond, made an assignment under seal, which the plaintiff received, and in which the former contracts *to pay and take up the note*, which is now alleged in the bill, to have been entirely paid. It can hardly be conceived, that when that very day, as the plaintiff alleges in his bill, he called upon Benjamin Brown and Albert G. Brown, when together, and the former told him, that if he would wait till a certain day, which was not a month from that time, that a deed should be ready, after having stated that he would give a deed without reference to any matters betwixt him and his son, that Albert G. Brown should promise in the assignment, that he would *pay* and take up the note, or that the plaintiff should have wished that the assignment should contain any such contract. The plaintiff had, the preceding August, received the written contract of Albert G. Brown to convey the farm, by the first of January, 1836, and had made payment of the full consideration therefor. If the note was paid, the plaintiff was entitled by his contract with Albert G. Brown, the bond of Benjamin Brown and the assignment thereof, to a conveyance of the farm early in the year 1836, and it is certainly remarkable that he should have slept upon his rights for

more than six years, and then should have awaked only, when the more vigilant creditor, of the one in whom was the legal title, had taken the land in execution, at a time, when he had no notice, that the equitable and legal title were not united in the same person, though he may have been admonished that the plaintiff had paid therefor.

*Bill dismissed, and costs for defendants.*